817 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William E. BROCK, Secretary of Labor, U.S. Department of
Labor, Plaintiff- Appellant Cross-Appellee,
v.
OHIO STATE COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA, AFL-CIO,
Defendant-Appellee, Cross-Appellant.
 Nos. 86-3039, 86-3089.
 United States Court of Appeals, Sixth Circuit.
 May 5, 1987.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 JONES, Circuit Judge.
 
 
 1
 Plaintiff, the Secretary of Labor, appeals and defendant cross-appeals the district court's grant of summary judgment to the defendant in this action to set aside the election of defendant's officers. Because we hold that the complainants in this case did not exhaust their internal union remedies in a timely fashion, we affirm the district court.
 
 
 2
 The facts of this case are undisputed. The defendant, Ohio State Council of Carpenters ("OSCC"), is an unincorporated association, domiciled in Ohio and chartered by the United Brotherhood of Carpenters and Joiners of America ("UBC & JA"), AFL-CIO. Because the OSCC is subordinate to the UBC & JA, its actions must be in conformity with the UBC & JA's constitution and bylaws. The OSCC's membership includes nine district councils and 57 local unions in the state of Ohio. Only labor unions affiliated with the UBC & JA may belong to the OSCC. The OSCC is primarily an informational, educational, and lobbying organization. It does not negotiate collective bargaining agreements. It does, however, work to increase membership in the UBC & JA and encourages employers to become signatories to UBC & JA collective bargaining agreements.
 
 
 3
 The OSCC's constitution requires it to hold a biannual convention. When the convention is not in session, the OSCC is governed by its Executive Committee. The Executive Committee is composed of 16 OSCC officers who are elected at the OSCC conventions. Only delegates to the OSCC convention may run for office and vote for officers. Section 7-E of the OSCC constitution provides that,
 
 
 4
 Delegates to regular conventions shall be elected by secret ballot by their Local Union at least thirty (30) days preceding the convention. The Secretary of each Local, after the election of its delegates, shall send the name and post office address of each delegate and alternate elected, to the Executive Secretary-Treasurer [of the OSCC].
 
 
 5
 J.App. 31. The OSCC constitution further states that,
 
 
 6
 Each delegate shall establish his claim to a seat in the convention by credentials and due book. Credentials [shall be] duly signed by the President and Recording Secretary of the Local Union he represents, with the seal of the Local Union affixed.
 
 
 7
 Id.
 
 
 8
 The dispute in this case arises out of the delegate elections for the OSCC's 1983 convention and election of officers. Several months before the convention, the OSCC sent a "convention call" to its affiliated local unions and district councils. The convention call notified the affiliates of the upcoming election and apprised them of their right to delegate representation at the convention. It specifically noted that delegates "shall be elected by secret ballot by their Local Union," but it did not set forth the statutory requirement that all members receive prior notice of the election.
 
 
 9
 Local 171, an affiliate of the OSCC, received the convention call. At one of its regular monthly meetings, on June 10, 1983, the members who were then present passed a motion electing five men as delegates to the OSCC convention. Contrary to statutory requirements, these delegates were not elected by secret ballot, nor was notice of this election sent to the members 15 days beforehand.
 
 
 10
 On July 8, 1983, at a subsequent monthly meeting, the members of Local 171 who were then in attendance vacated the earlier election and replaced it with a secret ballot election conducted then and there. Five delegates were chosen in that election. Of these five, four had not been elected in the original election. The July 8 election, like its predecessor, was conducted without 15-day prior notice to each member at his last known address.
 
 
 11
 These newly elected delegates requested credentials from the OSCC. When their request was refused, the four men who had been newly elected on July 8 filed a grievance with the General President of the UBC & JA on August 28, 1983. These men, complainants herein, pointed out that the July 8 election, unlike the June 10 election, had been conducted by secret ballot in compliance with the convention call. They asserted that since the convention call did not specify the need for prior notice to members, the July 8 election was valid and they should be issued credentials. On September 8, 1983, the OSCC sent Local 171 a letter advising that all 10 delegates should appear before the Credentials Committee at the convention. However, on September 9, 1983, the complainants received a letter from the General President advising them that under both the UBC & JA constitution and federal law, any election without prior notice was invalid. The men filed a motion for reconsideration with the General President on September 21, 1983.
 
 
 12
 The OSCC convention was held from September 27 through September 29. On October 6, 1983, the four aggrieved delegates filed a complaint with the Secretary of Labor under 29 U.S.C. Sec. 482 (1982). This complaint primarily argued that complainants should have been issued credentials for the convention. However, the complaint also included allegations that other locals and a district council had elected their delegates in an improper fashion, thereby abridging "the rights of the membership as a whole to elect their representatives to this convention...." J.App. 94-95. The Secretary declined to investigate this complaint on the ground that complainants had not previously protested the conduct of the entire OSCC election but, rather, had only protested the delegate election in their home local.
 
 
 13
 Therefore, on October 24, 1983, complainants filed another grievance with the General President of the UBC & JA. This grievance not only complained of their failure to receive credentials but also alleged that a district council and several locals had improperly selected their delegates to the convention. When complainants receive no response from the General President within the required three months, they again filed a complaint with the Secretary.
 
 
 14
 The Secretary filed a complaint in district court, seeking to set aside the election of the OSCC officers on the basis that delegates to the OSCC convention were improperly elected under 29 U.S.C. Sec. 481 (1982). On cross-motions for summary judgment, the district court held that the OSCC was a "labor organization" and so was subject to the statutory requirements regarding elections. However, the district court held that suit did not properly lie against the OSCC in this case since any violations of 29 U.S.C. Sec. 481 occurred during the locals' delegate elections rather than during the OSCC officer election. The district court concluded that any challenge to the delegate elections should have been made directly against those elections in a timely fashion. See 29 U.S.C. Sec. 482(a)(1). The court therefore granted the defendant's motion for summary judgment.
 
 
 15
 We begin by disposing of defendant's argument on cross-appeal that it is not a labor organization subject to the requirements of 29 U.S.C. Sec. 481. The OSCC bases this argument on the fact that it is composed of both local unions and district councils. It points out that while the district court held it to be a "conference," the regulations define a "conference" as "an organic body within a national or international labor organization ... composed of affiliate locals of the parent national or international organization." 29 C.F.R. Sec. 451.4(f)(1) (1986) (emphasis added). Although the OSCC is technically correct that the regulations' definition of a "conference" does not include an organization containing district councils, the definitions of intermediate labor organizations as set forth in the regulations are only intended to describe "typical intermediate bodies," 29 CFR Sec. 451.4(f), not to provide an exclusive list. We therefore conclude that the district court correctly held that the OSCC is a labor organization despite its inclusion of district councils.
 
 
 16
 The Secretary argues on appeal that he properly brought suit against the OSCC since the OSCC was responsible for the locals' conduct of delegate elections. We need not reach that issue, for even if the OSCC was required to supervise the delegate elections, and so is the proper defendant, those elections were still separate from the OSCC officer elections. Accordingly, complainants were required to appeal the challenged delegate elections rather than the OSCC election in a timely manner to the General President of the UBC & JA.
 
 
 17
 Section 57(G) of the UBC & JA constitution provides that,
 
 
 18
 All protests directed to the conduct of nominations or elections, or election procedures, in any subordinate body may be appealed to the General President within thirty (30) days from the date of the election.
 
 
 19
 J.App. 73. The relevant statute, 29 U.S.C. Sec. 481(d), regulations, 29 CFR Secs. 452.119, .128, and the OSCC constitution, Sec. 7-E, all refer to delegate selection by a local as an "election." Therefore, the constitution would seem to require that delegate selection be appealed within 30 days of the date of the local election. The Secretary, on the other hand, attempts to characterize delegate selection as only an element of the OSCC officer election. The Secretary argues that complainants thus were required to appeal only the OSCC officer election in a timely fashion. However, even the Secretary's own correspondence to complainants reveals that this argument is contrary to the parties' common understanding. For instance, an October 17, 1983 letter informed complainants that their internal appeal of their local's delegate election was not the same as an internal appeal of the OSCC officer election.
 
 
 20
 Treating the two elections as separate for the purposes of internal appeal not only makes logical sense but also is a much more efficient means of resolving delegate election disputes. Because pre-election grievances may be resolved by the actual election, post-election remedies are generally more expedient. See, e.g. Wirtz v. H.H. Guy Lodge, No. 872, 279 F.Supp. 873 (W.D.Pa.1967). However, to permit union members aggrieved by delegate elections to await the outcome of the officer elections before appealing serves no such purpose. The members' grievances with the delegate elections are unlikely to be resolved by the officer election. Moreover, challenging an entire officer election is an extremely inefficient means of addressing problems in the election of individual delegates. In contrast, if protests were made soon after the allegedly improper delegate elections, any problems could be remedied before the officer election. Indeed, the OSCC's requirement that delegate elections occur at least 30 days before the convention may be intended to allow for the timely correction of any improprieties in the election of delegates.
 
 
 21
 In the case before us, the complainants did not internally protest the other locals' and the district council's improper delegate elections until October 24, 1983. This was more than thirty days after the dates of the protested elections. We therefore agree with the district court that complainants did not exhaust their internal union remedies for those elections in a timely manner, and so complainants were not entitled to file a complaint with the Secretary concerning those elections. 29 U.S.C. Sec. 482(a)(1). Complainants never protested their own local's failure to give prior notice. Their only arguably timely complaint was that the OSCC refused to seat delegates elected without prior notice to the members. The Secretary did not base his case on this complaint, and so whether it has been exhausted is irrelevant.
 
 
 22
 Accordingly, we AFFIRM the judgment of the district court.